MARÍA LUISA MERCADO RIERA DE BELAVAL ET AL., Petitioners, *v.* DISTRICT COURT OF PONCE, Respondent.

No. 1517.   Argued May 24, 1943.—Decided July 14, 1943.

*Celestino Iriarte Miró* and *Héctor González Blanes* for María Luisa Mercado Riera. *José A. Poventud* for Adrián Mercado Riera. *Henry G. Molina* for the executor and intervener, Mario Mercado Riera. *J. C. Santiago Matos* for testamentary commissioner in partition, Pedro M. Porrata. *Félix Ochoteco, Jr.,* and *Fernando Zapater* for the remaining interveners.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

In an opinion delivered by this court on April 29, 1938, in the case of *Porrata v. District Court,* 53 P.P.R. 140, 148, this court expressed itself as follows:

"All the parties interested in the inheritance of Mario Mercado Montalvo should co-operate with the lower court in framing a judicial inventory with all due expedition so that this estate be taken one step further along its road to division and partition . . ."

More than five years have elapsed and little or no progress has been made on the road that ought to have led, long ago, to the division and distribution of the hereditary estate of Mario Mercado Montalvo. What reasons are there for such inexplicable delay which conflicts with the ineludible duty to comply with the express wishes of the testator that his estate should pass, with the exclusion of certain legacies, to his four children? Apparently, the judicial controversies between these heirs themselves wherein simple legal questions have at times become complicated and whose determination has unnecessarily been delayed.

Such controversy comes again before us through three certiorari petitions filed by the heirs María Luisa and Adrián Mercado Riera in which they seek to vacate three orders made by the District Court of Ponce on March 23, 1943, whereby were decided three motions filed in said court one

year and four months previously, that is, on October and November, 1941. Although three certiorari proceedings are concerned, the fundamental question therein involved in the same, that is, whether the executorship of Mario Mercado is in force and, consequently, we are going to dispose of them in a single opinion.

The motion, the subject matter of certiorari No. 1516, was filed by Attorneys Félix Ochoteco and Fernando Zapater in proceeding No. 782 of the lower court, in which letters testamentary were issued to Mario Mercado Riera as testamentary executor. In said motion they requested the court to fix the fair value of the services rendered by them to the executor as from September 9, 1938, their contention being that $60,000 was a reasonable amount. Upon notice of said motion being served on Attorneys José A. Poventud and Celestino Iriarte as counsel, respectively, for Adrián Mercado and María Luisa Mercado, the latter heirs filed a special appearance in order to move for the annulment and quashing of the process served on said attorneys on the ground that the executorship had expired in September, 1939, and any former representation of Adrián and María Luisa Mercado by said attorneys in case No. 782 ''does not empower said attorneys to receive or accept or anybody to summon them or serve them'' with notice of said motion which is a separate and independent proceeding.

The motion, the subject matter of certiorari No. 1517, was filed by the heirs Adrián and María Luisa Mercado in the same proceeding No. 782, *supra,* in which they sought an order of the court directing Mario Mercado Riera to deliver to, or place at the disposal of, the heirs all the properties making up the estate because the executorship had expired as far back as September, 1939, and because all the heirs had subscribed a compromise contract in September, 1938, by

virtue of which they had distributed among themselves all the properties, after the legacies made by the ancestor had been paid.

The motion, the subject matter of certiorari No. 1518, was filed by executor Mario Mercado Riera requesting authority to sell real property from the hereditary estate, to withdraw certain funds deposited in court and to cash a check which he had in his possession. He served copy of said motion on Attorneys Poventud and Iriarte and the heirs raised the same legal question already mentioned in certiorari No. 1516.

The three motions having been heard and submitted, that is, the motions of the heirs challenging the service of process on the attorneys and that in which they applied for the delivery of the properties, the lower court denied them. Having alleged that in so acting the court exceeded its jurisdiction and incurred in procedural errors, heirs Adrián and María Luisa Mercado filed the present certiorari proceedings. The parties have filed very lengthy briefs in which they raise and discuss very interesting questions concerning the construction that should be given to the provisions of our Civil Code regarding the appointment, powers, and term of the testamentary executor, concerning the scope of the provisions of the Law of Special Legal Proceedings as to the judicial intervention in said executorship. For a proper understanding of the question raised it becomes necessary to recite all the facts involved in the case, as follows:

Mario Mercado Montalvo died on August 22, 1937, and left a holographic will in which he designated as his sole and universal heirs his four children, all of them of age, María Luisa, Margarita, Adrián, and Mario Mercado Riera, and appointed the latter as testamentary executor, relieving him from the furnishing of bond and "extending to him the statutory term of one year for whatever time might be necessary to perform his office," and designated Pedro N. Po-

rrata as commissioner of partition. He further ordered that certain legacies be paid to his grandchildren, great-grandchildren and other people, amounting to about $270,000.00, and certain life annuities; but enjoined his legatees not to resort to the courts to claim their legacies under penalty of forfeiting them entirely, the amount thereof accruing to his heirs. No special power was conferred by the testator on the testamentary executor. The will was duly probated in the lower court and recorded.

On August 31, 1937, Mario Mercado Riera instituted, in the District Court of Ponce, proceeding No. 782, regarding letters testamentary, and on the following day, September 1, 1937, the court made an order and issued to said executor his letters testamentary. On September 10, 1937, the lower court granted the executor a sixty-day extension for the preparation of the inventory of the hereditary properties.

In another proceeding, case No. 802 of the lower court, instituted by Pedro M. Porrata, the latter obtained a judgment, on September 8, 1937, acknowledging his authority as commissioner, and in that same proceeding the court granted him an extension until September 6, 1939, to perform his functions. Since then he has not been granted any further extension.

On January 24, 1938, the heir Adrián Mercado Riera brought in the district court proceeding No. 1213, relating to beneficiary acceptance of the inheritance, and on the same day he obtained an order summoning the parties concerned and ordering the executor to appear "with a full statement and appraisal of the assets and liabilities of the estate of the decedent Mario Mercado Montalvo, as well as any other information necessary for the preparation of the inventory of the properties of the aforesaid decedent." (The sixty-day extension allowed to the executor on September 10, 1937, in proceeding No. 782, had expired without said inventory having been filed.) Thereupon Commissioner Pedro M. Po-

rrata intervened in the beneficiary proceeding seeking to set aside the order of January 24, 1938, whereby the executor was required to prepare the inventory, on the ground that such preparation devolved upon the commissioner. His motion having been denied, he brought a certiorari proceeding in this court which led to our decision in *Porrata* v. *District Court, supra,* wherein the writ issued was quashed and the order of the lower court was left standing.

It was not until September 12, 1938, that the inventory in proceeding No. 1213 was filed, owing to the fact that on September 9, 1938, the heirs executed a compromise contract, of which said inventory was made a part, as the latter had been accepted as correct by all the heirs.

## COMPROMISE CONTRACT

The first two clauses of this contract are not directly involved in this litigation, as the first of them refers to the dissolution of the joint ownership which existed between the heirs themselves in connection with their inheritance from their mother Doña Eufemia Riera Dubocq, and the second one to the settlement of differences which had arisen in connection with the partnership Mario Mercado e Hijos.

The third clause consists of eighteen paragraphs, from letter (*a*) to letter (*r*), which expressly refer to the estate of Mario Mercado Montalvo. They are very long but have been substantially condensed by the petitioners in their brief as follows:

"It was agreed in paragraph letter (*a*) that the hereditary properties, with their appraisal and charges, comprised those which appeared on the inventory authorized by the heirs that same day, as well as any other properties, credits, rights, and actions that might exist, appear or turn up in the future, and that the inventory would be submitted to the District Court of Ponce for the purpose of proceedings Nos. 782 and 1213. Among other facts, said inventory showed the net amount of the estate to be $929,430.40, and in the assets a credit in favor of the heirs against the partnership Mario Mercado e Hijos amounting to $413,064.63.

"In paragraph letter (b), the heirs assigned to the executor from said credit of $413,064.63, a sum sufficient for the payment of the inheritance tax, overdue debts, testamentary charges and/or cash legacies, as shown by the inventory.

"In paragraph letter (c) it was stipulated that the legacies would be paid in full.

"In paragraph letter (d) the heirs and the partnership Mario Mercado e Hijos settled by compromise certain differences regarding the ownership of certain moneys in banks, the sum of $256,000 having been included among the assets of the inventory as belonging to the estate.

"In paragraph letter (e) there was acknowledged in full a mortgage credit amounting to $78,697.23 in favor of heir María Luisa Mercado Riera.

"In paragraph letter (f) the heirs expressly distributed among themselves the estate which they agreed to hold in common, as follows:

" 'The remaining properties of the estate of Don Mario Mercado Montalvo, as appears from the aforesaid inventory, and those that might turn up afterwards as belonging to the ancestor, shall be understood as being, and are hereby, distributed, share and share alike, among the four heirs, Don Mario, Doña Margarita, Don Adrián and Doña María Luisa Mercado Riera, the heirs always to endeavor to avoid the continuation of the common ownership.'

"The 10% interest held by the testator in the social capital of the partnership Mario Mercado e Hijos had also been distributed by clause 2, subdivision 'I' of the contract in question, in the proportion of 2.50% to each of the four heirs.

"In paragraph letter (g) it was stipulated that the testamentary executor should render to the other heirs a final account of the fruits, rents, and products, or any other accretions of the hereditary estate, within the mandatory period of 'fifteen days following' the execution of the compromise contract, such accounts being subject to challenge, etc.

"In paragraph letter (h) it was stated that the testamentary executor would be entitled to any statutory compensation in his favor, to lawful and necessary disbursements made, etc., which should be included in the final accounts to be rendered by him within fifteen days from the execution of the contract.

"In paragraph letter (*i*) Mario Mercado Riera, as the then testamentary executor and in connection with the estate left by Mario Mercado Montalvo, agrees again with the other heirs upon a peremptory term of ten days from the date of the compromise contract, for serving notice of the death of the testator upon the Treasurer of Puerto Rico.

"In paragraph letter (*j*) it was stated that all the legacies with accrued interest thereon would be paid by the executor as provided for in the will, the then executor having been empowered to pay them prior to the time set forth in the will for their payment, etc.

"In paragraph letter (*k*), all the heirs undertook to secure the claims of contingent creditors by furnishing personal security; and those who failed to do so promised then to mortgage the valuable estate 'Hacienda Feliz,' within three months from the execution of the contract to the extent of their interest therein. Adrián and María Luisa Mercado Riera informed the testamentary executor Mario Mercado Riera on December 7, 1938, of their willingness to mortgage to the creditors the 'Hacienda Feliz.'

"In paragraph letter (*l*) Pedro M. Porrata, as testamentary commissioner, in view of the agreements between the heirs already recited and which include that relating to the distribution of the estate into four undivided one-fourth interests, agreed with the heirs as follows:

" '. . . bearing in mind that the heirs, Don Mario, Doña Margarita, Doña María Luisa and Don Adrián Mercado Riera, are in agreement regarding the manner and terms of the partition or distribution of the estate left by the ancestor, Don Mario Mercado Montalvo, and in regard to everything in connection thereof, accepts said contract as if he were a party thereto in all its stipulations, terms and conditions, insofar as the same affects him as commissioner of partition of the said estate, and undertakes to abide thereby in conformity with the literal text of the present contract, without modification, addition or alteration whatever in the draft of partition of the hereditary estate referred to in the following subdivision.'

"In paragraph letter (*m*) Pedro M. Porrata undertook to 'perfect the said draft of partition within ten days from the payment of the inheritance tax,' exclusively in accordance with the terms of the compromise contract, it being stated again that it could not be 'enlarged, except as regards the description of the hereditary estates or properties, nor modified or added to, or altered in any way'; and

it was therein agreed that for the study, preparation and execution of the said draft of partition in the manner agreed upon in the compromise contract, the commissioner should be paid as compensation, chargeable against the estate, $20,000.00.

"In paragraph letter (*n*) it was agreed to include among the charges against the estate, the payment of certain professional fees to Attorneys Félix Ochoteco and Fernando Zapater Martínez for professional work and services rendered by them in connection with the inheritance.

"In paragraph letter (*o*) it was also agreed to pay, as a charge against the inheritance, further fees to Attorneys J. A. and A. S. Poventud, only for professional services rendered in proceeding No. 1213, regarding the beneficiary acceptance and inventory, instituted by Adrián Mercado Riera.

"In paragraph letter (*p*) the heirs mutually authorized each other to embody the private agreement regarding the compromise into a public deed, which the petitioners herein did on February 25, 1941, by means of a public deed which was admitted by the district court as their exhibit 6 in this proceeding.

"In paragraph letter (*q*), as regards all the deeds to be executed in the short and peremptory terms stipulated in the contract, it is again stipulated that "its terms, stipulations, clauses, and conditions shall not be modified, added to, or altered in any way, nor shall they be enlarged in any sense, except as regards the description of the properties involved in each deed to be executed, and said stipulations, clauses, terms, and conditions shall always be literally transcribed, such as the same are set forth herein.' ''

Although proceeding No. 1213, regarding beneficiary acceptance, was instituted by Adrián Mercado, no provision was ever made within said proceeding by the lower court upon petition of any interested party for any judicial administration whatever of the estate (§974 of the Civil Code, 1930 ed.), nor was any appointment of judicial administrator ever sought or obtained, in proceeding No. 782, regarding letters testamentary, of this hereditary estate which has always been, ever since the death of the testator, in the possession of the coheir Mario Mercado Riera as testamentary executor.

According to paragraph letter (*g*) of the compromise contract, *supra,* the period of fifteen days therein fixed for the executor to file his final accounts expired on September 24, 1938. Such accounts were rendered one year and six months thereafter, that is, on March 6, 1940. They were challenged by the petitioners herein, were the subject matter of hearings and a decision thereon was rendered on February 19, 1942. An appeal therefrom was taken by both sides. Subsequently, the executor rendered other accounts on October 27, 1941, that is, on the same day as the filing by the petitioners of their motion requesting the court to order the executor to deliver the estate to all the heirs. Coheir Margarita Mercado Riera, on being served with copy of the motion, stated *that she had no objection to the same.* We see, therefore, that the petitioners and Margarita Mercado together represent three-fourths of the state. Coheir and executor Mario Mercado Riera answered the motion of the petitioners as follows:

''2. That as to the delivery of the hereditary estate by the appearing executor to the heirs, including himself as one of them, he has always been ready and willing to do so in this particular in the 'compromise contract' so often mentioned in the petition answered hereby, wherein it was agreed that a 'deed of partition' would be perfected by Don Pedro M. Porrata, as testamentary commissioner of partition pursuant to the terms of said 'compromise contract,' and that, once the same was executed by the heirs, delivery would be made of the hereditary estate in accordance therewith. That the commissioner duly perfected and delivered to the above heirs said deed of partition which he has always been willing and is now willing to execute, although heirs Doña María Luisa and Don Adrián are not so willing.

''3. It is the opinion of the undersigned that such deed of partition should be executed and, under the terms thereof, there should be allotted and delivered to each heir such part of the estate to which the same may be entitled, without prejudice to any readjustment that might have to be made once this Hon. Court has passed

upon the challenges of the said heirs Doña María Luisa and Don Adrián Mercado Riera to the accounts rendered by the undersigned executor on March 6, 1940.

"4. That delivery of the hereditary estate should not be made to the heirs or to either of them unless prior thereto or simultaneously with such delivery, the payment is secured of all the debts of the ancestor, as well as of the legacies, and always withholding sufficient funds or assets to secure all the obligations of the executorship specified in the supplementary account which covers the period from March 5, 1940, to October 23, 1941, as well as the fees of the attorneys for the executor, Félix Ochoteco, Jr., and Fernando Zapater, and to secure the payment of any attorney's fees that might be incurred until the termination of the present proceeding."

As we have stated, it was not until March, 1943, that the lower court decided the motions, and as to the delivery of the estate, it partly said:

"As may be seen and repeatedly appears from the record, the executor has been willing to deliver the estate to the coheirs, so that, as regards the delivery, there is no controversy, although the executor conditions the same upon the payment of the debts and attorney's fees, or the furnishing of security therefor.

"   *          *          *          *          *          *          *

"We are inclined to think, although it does not seem to us necessary to base our decision thereon, that the several incidents established within the present litigation, together with proceeding No. 1213, 'Regarding Beneficiary Acceptance of the Inheritance and Preparation of an Inventory,' turned the whole controversy between these heirs into a testamentary proceeding; to say the least, the essential characteristics of this kind of actions are comprised and mixed up in all the various steps taken in connection with this inheritance.

"   *          *          *          *          *          *          *

"We are inclined to think that the expiration of the year of the (sic) and its extension for a like period, as provided by law, does not terminate ipso jure the executorship, especially where the heirs themselves, by their acts, have brought about the circumstances concurring in this case.   (See 65 Jurisprudencia Civil, 247; 82 Id. 390; 86 Id. 377; 93 Id. 177; 111 Jurisprudencia Civil (1910), 681;

Decision of the Division of the Registries of July 3, 1926, and of January 30, 1911.) (See also §§827 and 828 of the Civil Code).

"Notwithstanding the above statements, if we assume that Don Mario Mercado Riera is neither an administrator nor an executor whose tenure of office has been extended by the heirs, we might agree with counsel for the heirs Don Adrián and Doña María Luisa that he is an agent or attorney in fact of the coheirs, inasmuch as he was commissioned to pay the legacies and interest thereon conformable to the provisions of the will of their ancestor. As Don Mario is, moreover, a coheir as regards the payment of hereditary debts and legacies, the power conferred on him by the testator was extended. To order him to unconditionally deliver the inheritance, without placing him in a position to fulfill his agency either by furnishing him with the necessary means to pay them as well as the attorney's fees which are expenses of administration or by securing their future payment by the heirs, would amount to leaving the fulfillment of the compromise contract to the will of one of the parties. a thing which is not sanctioned by law. (Section 1208 of the Civil Code.)"

The executor asks in his brief, what is the matter in controversy between the parties which has given rise to the whole litigation although both sides, *apparently,* desire to terminate the same? It seems to us that the word *"apparently"* which we have underlined might be the gist of the whole controversy. It is clear that the fundamental remedy is that involved in proceeding No. 1517, that is, that which refers to the delivery of the hereditary estate. If the petitioners are right in such proceeding, their motions in proceedings Nos. 1516 and 1518, should have been sustained. The petitioners sum up the errors imputed to the lower court in proceeding 1517, as follows:

"The court *a quo* incurred in a grave jurisdictional error and in a serious and prejudicial procedural error in decreeing the continuation of an executorship which had expired on September 1, 1939, without the granting of an extension, and in thereby refusing the unconditional delivery of hereditary properties to its lawful owners in further compliance with the will of the testator.

"The lower court exceeded its jurisdiction in deciding and acting

as if the estate left by the testator at his death had been subject to a judicial administration, without the same having ever been sought or decreed in any manner, as required by §23 of the Law of Special Legal Proceedings (§556 of the Code of Civil Procedure, 1933 ed.); and in deciding and acting as if an executorship, supposing the same had not expired, amounted to a judicial administration or universal testamentary proceeding, in conflict with the legal provisions applicable in the premises.

"The district court, likewise, exceeded its powers and incurred in grave procedural error in denying the indisputable right of the lawful owners of the estate to the rendition of final supplementary accounts in order to ascertain their status."

The intervener executor in turn alleges that proceeding No. 782 regarding Letters Testamentary, "is a general testamentary action or proceeding (probate proceeding) in which the district court has wide jurisdiction to pass upon every question regarding the liquidation and distribution of the hereditary estate until its delivery to the interested parties." In support of his contention he sums up the provisions of the Act relating to special legal proceedings which we transcribe as references.[1]

[1]"(1) *Designation of Banking Institution.*—It shall be the duty of the executor to petition the court to designate a banking institution in which there shall be deposited the cash balance of the estate. Section 587 (54).

"(2) *The Inventory.*—Within ten days after 'his appointment' the executor shall prepare the inventory for which purpose the heirs and legatees shall be summoned if they have 'made their appearance in the proceeding.' 568 (35).

In case of dispute as regards the value of the property, the judge shall appoint two appraisers to make the appraisement. Upon the completion of the inventory the same shall be filed with the clerk. 570 (37).

"(3) *Payment of Debts with Intervention of the Court.* It shall be the duty of every executor to pay the valid debts of the decedent with intervention of the heirs, or, in default thereof, of the district court. 593 (60). For this purpose a notice shall be published in a newspaper designated by the judge of the district court. 594 (61). Should the executor reject the claim, the creditor may institute the proper action against the administrator of the estate for enforcing the same. *Id.*

"(4) *Quarterly Statements of Accounts.*—The executor shall file in the district court quarterly statements of accounts which shall be opened for inspection in the clerk's office to any party interested in the estate. 587 (54).

"(5) *Final Account.*—Every executor shall file with the court a final account sworn to by him and accompanied by proper receipts and vouchers which shall

■ The fundamental question which is the gist of the whole controversy is whether or not the executorship in the present case has terminated by virtue of the expiration of the period which the testator and the law allowed the executor, or whether the heirs, by their acts in accordance with the compromise contract, could extend said period.

The testator provided that he extended the executorship the statutory one-year term "for the time that may be necessary to fulfill his office." Sections 826 and 827 of the Civil Code (1930 ed.) provide as follows:

"Sec. 826.—The executor for whom the testator has not fixed a term must fulfill his office within a year, counted from his acceptance or from the conclusion of the litigation which may have been instituted with regard to the validity or nullity of the will or of any one of its provisions.

be open for inspection and all parties interested in the estate shall be cited to the end that they may attend the final settlement. 588 (55). Should objections be filed to the accounts, hearings shall be had, 589 (56), and the court shall make a final order, modifying or amending the same and charging the executor, which order shall be appealable. 590 (57). Any heir or legatee may petition the court to compel the executor to render his final account, 591 (53), and the final decree shall provide for the distribution of any surplus, in money or property, remaining after the payment of the debts of the decedent and the expenses of the administration among those entitled thereto by law. 592 (59).

"(6) *Compensation.*—Every executor shall be entitled to a specific compensation, and the judge shall also allow the administrator or executor the necessary expenses incurred in the administration, including the cost of advertising, statutory publication of notices, maintenance and care of the property, legal advice and traveling expenses. 586 (53).

"(7) *Division and Partition.*—Whenever an executor shall have in hand a sufficient amount for the payment of the debts and expenses of administration, he must apply to the district court for the appointment of a commissioner to make the partition and division of the inheritance in case the decedent failed to appoint said commissioner. 600 (67). The acceptance of such appointment by the commissioner shall entitle each and every interested party to apply to the court for an order to compel him to perform his functions within a reasonable time. 602 (69). If objections were filed to the commissioner's report any of the parties may bring the matter on for hearing 'before the proper court.' 603 (70). The court shall approve such partition making therein 'such legal modifications as the court may deem advisable,' and when the final order is made, the heirs shall be placed in possession of the shares which have been respectively alloted to them. 604 (71)."

"Sec. 827.—Should the testator desire to extend the legal term, he must expressly fix the time of the extension. Should he not have fixed it, it shall be understood that the term is extended for one year."

The phrase "for the time which may be necessary to fulfill his office" used by the testator does not designate any specific term of the extension, and, in accordance with the jurisprudence and the commentators on the Civil Code, it should be understood as covering only the additional year specified in §827, *supra*. In construing §905 of the Spanish Civil Code, equivalent to §827 of our statute, the Supreme Court of Spain, in a judgment of November 24, 1906, 105 *J. C.* 812, 819, said: " . . . In view of the terms of Section 905 of the code, a testator who wishes to extend the term of the testamentary executorship must expressly specify the time of the extension, without, therefore, it being admissible that he may authorize an indefinite extension. Should he fail to do so, the extension is understood only for the term of one year, pursuant to the clear provision of the aforesaid Section. . . " See to the same effect Sánchez Román, *D. C.*, vol. 11, 1450; 6 Manresa, *Comentarios al Código Civil*, 736.

Don Antonio Maura, renowned Spanish expert in civil law, in an opinion on a point of law involving this same question, expressed himself as follows:

" . . . Section 905 provides that should the testator desire to extend the legal term (one year, under Sec. 904) he must expressly fix the time of the extension. Should he not have fixed it, it should be understood that the term is extended for one year. In a second paragraph of the same Section the judge is authorized to grant another term for the time which may be necessary, in view of the circumstances of the case. It does not appear, however, from previous facts concerning the legal point involved, any information or indication as to Don Prudencio or Don Félix having obtained, or even sought, any judicial extension whatever. Likewise, Section 906 provides that the heirs and legatees may, by common consent, extend the term of the executorship for the time they may consider necessary,

but if the agreement is only that of a majority, the extension cannot exceed one year. From an examination of the papers it seems unquestionable that there was never any deliberation between the heirs and the legatees, not even an intention of so deliberating, so that the term defined *ex lege* in Section 905 was not extended in any of the valid forms.

" *       *       *       *       *       *       *

(B) It may definitely be held, and as an *undeniable truth*, that by reason of the lapse of the longest term of the office, the executorship of Don Prudencio and Don Félix terminated, *ex lege*, two years from the acceptance of the executorship, it devolving upon the sole heir of the ancestor to proceed with the execution of the will of the testator, according to Section 911 of the Civil Code. . . ." (Italics ours.) 4 Maura, *Dictámenes* (Legal Opinions), 308, 309, and 351.

We decide, therefore, that as Mario Mercado Riera was granted his letters testamentary as executor on September 1, 1937, the term of one year allowed him by §826, *supra,* expired on September 1, 1938, and that the additional year granted him by the testator under §827, *supra,* expired on September 1, 1939, when the executorship terminated pursuant to §832 of the Civil Code which provides that "executorship terminates by the death, incapacity, renunciation, or removal of the executor, *and by the lapse of the term fixed by the testator, by law, and, in a proper case, by the persons interested"* (italics ours), inasmuch as there is nothing in the record to which application may be made of §828 of the same code which provides that *"the heirs and legatees may, by common consent,* extend the term of the executorship for the time they may consider necessary, but if the agreement is only that of a majority, the extension cannot exceed one year."

The lower court, therefore, erred in holding that the expiration of the term of two years provided in the Civil Code for a case like the one at bar "does not terminate the executorship." The court, however, adds: "Especially where the heirs themselves, by their acts, have brought about the circumstances concurring in this case." Although the acts

mentioned by the court are not specified, we suppose that they refer to the compromise contract, executed by the heirs on September 9, 1938. However, we cannot disregard the provisions of §828 of the Civil Code, and, as the legatees have not intervened in any way in said compromise contract, the latter cannot, by judicial construction, operate as extending the term of the executor. On the contrary, if we pay attention to the short and precise terms fixed by the heirs so that the executor could perform his duties as such, it cannot be construed as an indefinite extension, as claimed by the executor. Moreover, at the time of the execution of said compromise contract, September 9, 1938, the executor still had one year for the fulfillment of his office, which did not expire until September 1, 1939. We cannot logically construe the contract as an indefinite and indeterminate extension of the executorship.

It is true that the petitioners herein allowed the executor to continue acting, after the expiration of his term in September, 1939, until the month of October, 1941, when they filed their petition for the delivery of the hereditary estate; but as no agreement whatever has been shown between the heirs and the legatees, and, as the heirs did not constitute a majority, such conduct cannot either be construed as amounting to the granting of any of the extensions provided for in §828, *supra*. The jurisprudence of the Supreme Court of Spain, cited in its order by the lower court, is not applicable to the facts in this case. The judgments of February 16, 1889, and October 6, 1897, 65 *J. C.* 247 and 82 *J. C.* 390, construe Law 6, Title 10 of Partida 6, but not the provisions of the Civil Code, and so, in the judgment last-above mentioned it is stated as follows: " . . . the judgment does not infringe any of the provisions or doctrine cited in ground first, because neither Law 28, paragraph 2, Title 3 of the Justinian Code . . . . (supposing that the same covers executorships in general), nor Law 6, Title 10, Partida 6 . . .

*established the caducity ipso jure sanctioned by Section 910 of the Civil Code."* 82 *J. C.* 393. (Italics ours.)

As to the citations from 86 *J. C.* 373, 93 *J. C.* 177, 171 *J. C.* 769, and 120 *J. C.* 280, all such cases are distinguished from the case at bar because of the fact that in the former cases the heirs had confirmed or ratified acts of the testamentary executor performed *subsequently* to the expiration of the executorship.

Section 910 of the Spanish Civil Code, above cited, equivalent to §832 of our Civil Code, provides that: "Executorship terminates by the death, incapacity, renunciation, or removal of the executor, and by the lapse of the term fixed by the testator, by law, and, in a proper case, by the persons interested." The following §833 provides that in the cases of the foregoing Section "the execution of the will of the testator shall devolve upon the heirs." In his commentaries on §910 and the judgment of October 6, 1897, *supra,* Manresa says:

"Upon the expiration of the term fixed by the testator or by law, in a proper case, the extension granted by the testator himself, by the heirs and legatees, or by judicial authority, terminates *ipso jure* the executorship, *even though he may not have terminated his commission."* 6 Manresa, *Comentarios al Código Civil* (1932), 753.

On pages 238 and 239, he says:

"Upon the expiration of the term and the extension or extensions, in a proper case, the testamentary executorship terminates by force of law, without the necessity of any judgment or any special order, as set forth in Section 910, and the execution of the will of the testator devolves upon the heirs, according to Section 911.

" * * * * * * *

"If the executor refuses to consider his commission as terminated at the expiration of the term or to deliver the properties, if any, or to render accounts, *he may be compelled to do so by judicial means."* (Italics ours.)

Nor can it be maintained that the term of the executor is still in force and that the partition should be made

in accordance with the draft of partition prepared by him. As we have stated, the executor in the present case was granted by the lower court an extension until September 6, 1939, to fulfill his office. Has neither sought, nor has he been granted, any additional term. Under such circumstances, it has been held by the Division of the Registries that:

"Bearing in mind, therefore, that it is the clear duty of the commissioner in partition to fulfill his office within a certain term, and that if such term is not expressly provided by the legislator, such omission must be filled applying by analogy that which is granted to executors, that is, a term of one year, it being understood that the lapse of said term without using his power constitutes a tacit renunciation thereof;

"Bearing in mind that as more than one year has elapsed from the death of the testator until the execution by the heirs of the deed of partition which has given rise to the present appeal, Section 1058 has not been infringed, inasmuch as, under Section 911, applicable also by analogy, if the executor allows the term designated by the testator or by law to lapse without fulfilling his office, the execution of the will of the testator devolves upon the heirs;" . . . 96 J. C. 599, 601, 602.

In its decision, the lower court successively rejects several hypotheses as to the capacity in which Mario Mercado Riera is acting, and, after discarding those which relate to the administrator or executor, says that it might agree with the petitioners that "he is an agent or attorney in fact of his coheirs," but that "as Don Mario is, moreover, a coheir, the power conferred on him by the testator as executor was extended to him for the purpose of the payment of the debts and legacies." We do not agree. Assuming that, upon the expiration of his term as executor, Mario Mercado Riera continued as agent of the other coheirs, it is clear that his principals could terminate the agency at any time (§1624 of the Civil Code), and that under §1611 "every agent is bound to give an account of his transactions and to pay to the principal all that he may have received by virtue of the agency, even though

what has been received is not owed to the principal." We say again that the powers conferred on the executor by the compromise contract were so conferred one year before the expiration of his term and that the short and precise terms therein fixed do not imply at all the extension of such term, but, on the contrary, that the hereditary estate should be delivered to the heirs. They apportioned among themselves the hereditary estate (subdivision (*f*) of the compromise contract) and the commissioner in partition, bearing this in mind, and, moreover, the fact that the heirs had "agreed regarding the form and terms of the partition or distribution of the estate," (subdivision (*l*), compromise contract), likewise consented to sell contract. Neither the executor nor the commissioner complied, either within the terms fixed or subsequently, with the terms of the contract. To hold that compelling the ex-executor to deliver the estate "would amount to leave the performance of the compromise contract to the will of one of the parties," as did the lower court, is not justified by the facts of the case. On the contrary, it may well be maintained that upon the expiration of the executorship and of the terms fixed by the compromise contract, one of the heirs alone cannot be given possession of the whole hereditary estate, inasmuch as the execution of the will of the testator devolves, under the law, upon all the heirs. Section 833 of the Civil Code.

Having reached the conclusion that the term of the executorship lapsed by statutory provision in September, 1939, it remains for us to decide whether, as maintained by the lower court, all the incidents in the present case "turned the whole controversy between these heirs into a testamentary proceeding." This is the same legal viewpoint adopted by the attorney for the former executor in his brief when referring to, and commenting on, the provisions of the Act relating to special legal proceedings, *supra,* and when maintaining that the properties of the estate are in *custodia legis* on the ground that the proceeding for the issuance of letters testa-

mentary turned the whole proceeding into an action *in rum*, as happens in the United States in *"probate proceedings."*

The question is not new and has already been determined by this court. In *Aponte & Sobrino* v. *Heirs of Pérez,* 48 P. R.R. 437, 441, 442, it was stated:

"The defendants argue that the plaintiff firm admits in the complaint that Jenaro Cautiño Insúa is the executor of José Pérez Llera, alleging that payment was demanded by the plaintiff of the said executor who, up to the present time, has not paid the amount claimed. It is true that this allegation is made in the complaint. *But that does not mean that because an executor has been appointed, the property of the estate is under judicial administration.* The executor spoken of in our civil law is not in the same position generally prevailing in the American legal system. Here, as there, the executor derives his authority from the will of the testator, from the testament which names him; but with us, when the testator does not especially determine his powers, these are limited by Section 824 of the Civil Code, according to which he is authorized only:

" '1. To dispose and pay the suffrages, and funeral expenses of the testator in accordance with the provisions made by him in his will and, in their absence, according to the customs of the town.

" '2. To pay, with the knowledge and consent of the heir, the cash legacies.

" '3. To carefully see to the execution of the other provisions of the will and maintain, when just, its validity in and out of court.

" '4. To take the necessary precautions for the preservation and custody of the property, with the intervention of the heirs who may be present.'

"Commenting on Section 902 of the Spanish Civil Code, equivalent to Section 824 of our Code, Manresa says:

" 'The executor watches over the faithful execution of the testamentary provisions, the fulfillment of which is not directly placed in his charge. But, not well, however important this function and that of the defense of the will may be, the executor, according to this subdivision of Section 902, does not represent the estate. If the will is attacked, he has the personality to be a party defendant and to defend its validity or that of any of its clauses; if any provision is violated or is not executed, he has the personality to sue the heirs themselves and to force them to fulfill and respect whatever the

testator ordered; *but it is not incumbent upon him either to manage the testate at all, or to pay debts,* or to satisfy any but cash legacies, or to make partitions, or anything else not expressly determined by subdivisions 3 and 4 of Section 902, unless the testator has given him power to do so.' 6 Manresa, 749.

"In the instant case we know only that the plaintiffs have admitted that Jenaro Cautiño was named executor of José Pérez Llera and that is not sufficient to place the property in *custodia legis.*" (Italics ours.)

And in *Pérez* v. *Succrs. of M. Pérez & Co.,* 41 P.R.R. 844, 845:

". . . In the United States the word 'heirs' generally applies only to those who take the real estate. Administrators and executors in the United States fully represent the deceased, not only for settling the debts and the like, but for the collection and distribution of the personal property belonging to the decedent. In Puerto Rico the principle of universal succession in a modified form applies and the heirs represent the decedent from the moment of the death and are entitled to all the property. Administration in Puerto Rico is for limited purposes and ceases when a declaration of heirship is made. *Pérez* v. *Zeda,* 35 P.R.R. 303."

It had already been held that: "When it does not appear clearly from a will that the testator authorized the executor to sell property for the payment of debts, if the executor wishes to exercise such authority he should bring himself within the scope of a judicial administrator by taking the steps required by the law." *Ex parte Suau,* 27 P.R.R. 890 (syllabus); and it has been said in *Heirs of Pellicia* v. *District Court,* 36 P.R.R. 588, 590, that: "The executorship, unless otherwise provided by will, answers only a provisional and transitory situation which presents itself on the death of the testator and has for its scope certain measures which have to be taken in connection with the inheritance pending its acceptance by the heirs and their agreement as to the division thereof." See also *Crehore* v. *The Registrar of Property,* 22 P.R.R. 30, 33, wherein it was expressly stated that: "The executor is not the administrator of the estate,

for unless the testator has conferred that character upon him he has no other powers than those specified in Sections 876 and 877 of the Civil Code." (§§823 and 824, Civil Code, 1930 ed..)

If the heirs in the case at bar had already accepted the inheritance and agreed upon its distribution, pursuant to the compromise contract of September 9, 1938, the fact that the executor and the commissioner in partition had failed to perform its terms should not be ground for claiming, several years afterwards, that the heirs are not in agreement as to the way in which they should distribute the estate among themselves. Nor should the appeal pending regarding the order made by Judge Sepúlveda approving the final accounts submitted by the executor be ground either, for, apparently, according to said contract (subdivision (g)), such accounts covered only "the fruits, rents, and products, or any other accretions of the estate . . . and any balance resulting therefrom shall be distributed among the aforesaid four heirs of the ancestor, share and share alike." We say "apparently," because as admitted by the petitioners in their brief, "the concern for clearing up this particular constitutes, among others, one of the grounds of said appeal."

It is true that in *Porrata v. District Court, supra,* we said that "it may be that the time has come for the legislature to harmonize, by framing a complete statute covering the special field before us, the Spanish and American principles governing this whole and not unimportant phase of the law of decedents' estates." However, the Legislature has failed to do so, and, in the absence of any new statute, it is our opinion that, in accordance with the facts of the case at bar, it cannot be maintained that the substantive provisions of our Civil Code regarding the appointment, duties, and terms of a testamentary executor may be considered as altered or modified as to their scope as substantive law by the proce-

dural provisions of the Act relating to special legal proceedings. Neither within the proceeding regarding letters testamentary nor within the beneficiary acceptance proceeding did the estate of Mario Mercado Montalvo ever become a judicial administration, and, as the executorship had expired, it devolves upon the heirs to execute the will of the testator regarding any particular where the executor has failed to act.

In our judgment, the lower court exceeded its jurisdiction when holding that the hereditary estate was in *custodia legis,* without any judicial administration having been decreed, and, therefore, in certiorari No. 1517, its order of March 24, 1943, should be set aside and another rendered instead, ordering the ex-executor Mario Mercado Riera to proceed to deliver said estate to all the heirs of Mario Mercado Montalvo, in compliance with the terms of the compromise contract of September 9, 1938, and also to render supplementary accounts as from October 27, 1941, when he rendered his former accounts, until the time of such delivery, for all of which he is allowed a term of sixty days.

By reason of the foregoing conclusion, the order made by the lower court on March 23, 1943, the subject matter of certiorari No. 1516, is set aside on the ground that the service of notice on counsel for María Luisa and Adrián Mercado of the motion of Attorneys Ohcoteco and Zapater was not proper within proceeding No. 782 regarding letters testamentary, which service should have been made directly on the heirs in the proper proceeding and not in proceeding No. 782; and, likewise, the order made by the lower court on March 24, 1943, the subject matter of certiorari No. 1518, is set aside, for, as the executorship had terminated, the service of notice upon the attorneys of the heirs María Luisa and Adrián Mercado within proceeding No. 782 of the motion of the executor for the delivery of certain funds deposited in court was improper.

Mr. Chief Justice Del Toro did not participate herein.

ON MOTION TO AMEND OR MODIFY THE FOREGOING OPINION

July 31, 1943.

Mr. Justice Todd, Jr., delivered the opinion of the court.

In our opinion entered in these cases we stated that the lower court decided the three motions which are the subject of these certiorari proceedings one year and four months after they had been submitted. This was what appeared from the record sent up to us on certiorari, and we were completely justified in making our statement to that effect.

The respondent Judge has filed a motion setting forth that the last of these three motions "was finally submitted to the Court on the 18th day of December, 1942 by the brief of the petitioners in this case, filed by their attorneys Iriarte Miró, González Blanes, and José A. Poventud," which he supports with a certificate to that effect of the acting clerk of the lower court, and he requests that the opinion entered by this court be modified or amended to conform with the facts, that is "that the District Judge did not take a year and three months to decide the case . . . but rather three months."

We admit that when we pointed out the long period of time that elapsed before there was a decision of the motions by the lower court we did it expressly to call attention to that fact, even though we abstained from making any commentary whatsoever on the matter. Now, the fact that a party delays filing his brief in connection with one of three submitted motions does not justify the court's delaying a decision of all of the motions for over a year. In the sound

exercise of its discretion a court may grant a term or a reasonable extension thereof within which to file briefs, but the court is not obliged to do so nor should it delay decision of cases submitted to it because the attorneys fail to comply with their duty of aiding the court by briefs within a reasonable period. To grant extensions which add up to one year, for the filing of briefs in connection with a motion attacking the service of a summons, can hardly be said to be a sound exercise of judicial discretion.

The motion of respondent Judge is granted in part.

In order to clear up our principal opinion, we set forth that with respect to one of the motions the lower court only took three months to decide it.

Mr. Chief Justice Del Toro and Mr. Justice Travieso did not participate herein.